The TORRINGTON COMPANY, Plaintiff
and Defendant–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF France,
S.A., Defendant–Intervenors
and Plaintiffs.

Slip Op. 96–163.
Court No. 95–03–00350.

United States Court of International Trade.

Oct. 3, 1996.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz), Washington, D.C., for plaintiff and defendant-intervenor, The Torrington Company.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis); of counsel: Kira Alvarez, Michelle K. Behaylo and Dean A. Pinkert, Attorney–Advisers, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, D.C., for defendant.

Howrey & Simon (Herbert C. Shelley, Alice A. Kipel, Anne Talbot and Patricia M. Steele), Washington, D.C., for defendant-intervenors and plaintiffs, SKF USA Inc. and SKF France, S.A.

## OPINION

TSOUCALAS, Judge:

Plaintiff and defendant-intervenor, The Torrington Company ("Torrington"), commenced this action challenging aspects of the Final Results of the fourth antidumping administrative review of the antidumping duty orders, entitled *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.* ("Final Results"), 60 Fed.Reg. 10,900 (1995), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France* ("Amended Final Results"), 60 Fed.Reg. 16,608 (1995). Defendant-intervenors and plaintiffs, SKF USA Inc. and SKF France, S.A. ("SKF"), also challenge aspects of the fourth review.

### Background

The administrative review at issue was conducted by the Department of Commerce, International Trade Administration ("Commerce"), pursuant to section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675 (1992), and concerns antifriction bearing ("AFB") imports entered during the fourth review period, from May 1, 1992 through April 30, 1993. *Final Results,* 60 Fed.Reg. at 10,901.

On February 28, 1994, Commerce published the preliminary results of its review. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, Thailand, and the United Kingdom,* 59 Fed.Reg. 9,463 (1994). On February 28, 1995, Commerce published the Final Results at issue. *See Final Results,* 60 Fed.Reg. 10,900. After correcting the calculation of U.S. price ("USP"), Commerce published its Amended Final Results on March 31, 1995. *Amended Final Results,* 60 Fed.Reg. 16,608.

On July 31, 1995, the Court consolidated *Torrington Co. v. United States,* Court No. 95–03–00350, and *SKF USA Inc., et al. v. United States,* Court No. 95–04–00360, into this action, Consolidated Court No. 95–03–00350. Pursuant to Rule 56.2 of the Rules of this Court, Torrington and SKF both move for judgment on the agency record.

Torrington alleges that the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) failing to apply 19 C.F.R. § 353.26 (1994), known as the "reimbursement regulation," in all instances where (a) transfer prices between related exporters and importers were less than cost of production plus profit, or, alternatively, less than cost of production, and (b) actual dumping margins were found; (2) taking sales below cost into account in calculating profit for constructed value ("CV"); (3) resorting to the use of constructed value where sales were made below cost without first determining whether there were other similar models that could serve as price-based comparisons; and (4) adjusting foreign market value ("FMV") for pre-sale inland freight expenses.

SKF claims that: (1) Commerce should have utilized a tax-neutral methodology for adjusting for value-added taxes; and (2) Commerce's computer program calculating U.S. price ("USP") contained a clerical error.

### Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

■ The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on the grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. *Reimbursement of Antidumping Duties*

■ Torrington claims that Commerce erred by failing to apply the "reimbursement regulation" where (a) transfer prices were less than cost plus profit (or cost), and (b) actual dumping margins were found. Torrington's Mem.Supp.Mot.J.Agency R. at 12–22. In particular, Torrington claims that when a foreign exporter (usually the manufacturer) transfers merchandise to a related U.S. importer at prices below the cost of production plus profit (or cost) and actual dumping margins are found, the artificially low transfer price is equivalent to a transfer of funds, and so, should be regarded as a "duty reimbursement." *Id.* at 14. Torrington contends that these alleged duty reimbursements should be deducted from the USP pursuant to 19 C.F.R. § 353.26(a)(1). In the alternative, Torrington claims that Commerce should have further investigated possible reimbursement. *Id.* at 21–22.

Torrington also challenges Commerce's determination that the reimbursement regulation does not apply to exporter's sales price ("ESP") situations. Torrington's Mem.Supp.Mot.J.Agency R. at 14–19.

Commerce maintains that such a "transfer of funds" is not evidence of a reimbursement and, consequently, no adjustment to USP is necessary. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 11. Commerce further responds that it was not required to conduct a further investigation of possible reimbursement of duties. *Id.* at 10–14. SKF agrees with the position taken by Commerce. SKF's Opp'n to Torrington's Mot.J.Agency R. at 11–20. However, Commerce consents to a remand to clarify its position regarding the circumstances under which it will apply the reimbursement regulation in an ESP situation. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 14.

■ This same issue was brought before the Court in *Federal–Mogul Corp. v. United States,* 20 CIT ——, ——, 918 F.Supp. 386, 393–94 (1996). In that case, the Court sustained Commerce's decision not to adjust USP based upon intracompany transfers because the plaintiffs failed to "establish a link between intracorporate transfers and the reimbursement of antidumping duties." *Id.* at 394. For the reimbursement regulation to apply, the Court has required evidence beyond a mere allegation that the foreign manufacturer either paid the antidumping duty on behalf of the U.S. affiliate importer, or reimbursed the U.S. affiliate importer for its payment of the antidumping duty. *Torrington Co. v. United States,* 19 CIT ——, ——, 881 F.Supp. 622, 631 (1995); *see also Outokumpu Copper Rolled Products AB v. United States,* 17 CIT 848, 863, 829 F.Supp. 1371, 1383 (1993) ("the court emphasizes that 19 C.F.R. § 353.26 (1992) permits adjustment to United States price *only* where the producer or reseller *paid duties on behalf of the importer or reimbursed the importer*"). As in *Torrington* and *Federal–Mogul,* Torrington has presented no such evidence in this case. Mere evidence of intracompany transfers does not constitute a reimbursement and does not require Commerce to adjust USP.

There is no statutory or regulatory support for Torrington's alternative assertion. Indeed, this Court previously addressed this issue in a challenge to the second review. In *Torrington,* the Court refused to remand the case for further investigation, stating that because plaintiff had failed to provide evidence of a link between intracorporate transfers and the reimbursement of antidumping duties, Commerce properly decided not to

commit resources to conduct an investigation. 19 CIT at ——, 881 F.Supp. at 632. Similarly, in this case, Torrington has failed to provide such evidence. Hence, Commerce is under no duty to conduct a further investigation. The Court concludes that Commerce's decision not to adjust USP is supported by substantial evidence on the agency record and in accordance with law.

■ In deriving a USP to compare with FMV for dumping purposes, USP may be calculated on the basis of ESP (price at which a foreign manufacturer sells goods to a related U.S. importer), or purchase price (price at which a foreign manufacturer sells goods to an independent U.S. importer). 19 U.S.C. § 1677a(a)–(b) (1988). Commerce implied in the Final Results that it would never apply the reimbursement regulation in an ESP situation. *See Final Results,* 60 Fed. Reg. at 10,907. Commerce now states that such an implication does not represent its position, as it is inconsistent with the reimbursement regulation, and consents to a remand to clarify its position. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 14. This issue is remanded to Commerce to explain the circumstances in which it will apply the regulation in an ESP situation.

### 2. *Inclusion of Below–Cost Sales in the Calculation of Profit for Constructed Value*

Torrington further claims that Commerce improperly included below-cost sales in its calculations of profit for use in CV. Torrington's Mem.Supp.Mot.J.Agency R. at 22–29. Torrington contends that the inclusion of below-cost sales distorts the statutory scheme because such sales are not in the ordinary course of trade. *Id.* at 24.

In the alternative, Torrington argues that assuming, *arguendo,* that below-cost sales should not be excluded in calculating profit, Commerce should have nevertheless recomputed profits on the basis of the sample sales reported. Torrington's Mem.Supp.Mot.J.Agency R. at 29–32. In particular, Torrington claims that because the sample sales that Commerce used are representative for the purpose of price-to-price comparisons, the profit realized on these sales must be representative of the profit on the general class or kind of merchandise. *Id.* at 31. Hence, Torrington contends that Commerce should have computed CV based on the reported sample sales of such or similar merchandise. *Id.* at 29.

Commerce responds that neither the definition of CV, as stated in 19 U.S.C. § 1677b(e)(1) (1988), nor the definition of the ordinary course of trade, as stated in 19 U.S.C. § 1677(15) (1988), suggests that below-cost sales were outside the ordinary course of trade, and so, such costs should be included in the CV calculation. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 15–16. SKF agrees with the position taken by Commerce. SKF's Opp'n to Torrington's Mot.J.Agency R. at 30–62.

■ In calculating CV, Commerce includes profits for sales of merchandise of the same general class or kind in the home market, in the usual quantities and in the ordinary course of trade. *See* 19 U.S.C. § 1677b(e)(1). The statute itself does not limit the meaning of "ordinary course of trade" to sales made above cost but, rather, defines it as "the conditions and practices which ... have been normal in the trade under consideration with respect to merchandise of the same class or kind." 19 U.S.C. § 1677(15). Further, this Court recently concluded that for below-cost sales to be excluded from a CV calculation, a plaintiff must show that such sales were made outside the ordinary course of trade. *Torrington,* 19 CIT at ——, 881 F.Supp. at 633; *see also Federal–Mogul,* 20 CIT at ——, 918 F.Supp. at 403 (the Court reasoned that because the plaintiff "failed to present any evidence ... that the below-cost sales at issue were outside the ordinary course of trade, ... Commerce's inclusion of the below-cost sales in its calculation of profit for constructed value [was] reasonable and in accordance with law"); *see also Timken Co. v. United States,* 20 CIT ——, ——, 930 F.Supp. 621, 624–25 (1996).

■ In this case, Torrington has claimed that merely because the sales are below cost, they are outside of the ordinary course of trade. Torrington has not demonstrated

that the below-cost sales at issue are actually outside of the ordinary course of trade. Consequently, Commerce did not improperly include below-cost sales in calculating profit for CV purposes, and the inclusion of below-cost sales did not distort the statutory scheme.

■■■■ Torrington's alternative argument has also been addressed by this Court and is without merit. In *Federal–Mogul*, the Court stated that 19 U.S.C. § 1677f–1 (1988)[1] explicitly grants Commerce the authority to select appropriate samples for determining USP and FMV, as long as the samples are "representative" of the transactions under investigation. 20 CIT at ——, 918 F.Supp. at 403. However, the Court further noted that because Commerce has such broad discretion in its sample selection methodology, Commerce should also have discretion not to use samples at all. *Id.* at ——, 918 F.Supp. at 404.[2] In this case, as in *Federal–Mogul,* Commerce did not believe that the profit on the sale of such or similar merchandise could be presumed to be representative of the profit for the general class or kind of merchandise. *Final Results,* 60 Fed. Reg. at 10,923 (Comment 5). Under this Court's rationale in *Federal–Mogul,* Commerce's decision not to rely on the samples for calculating CV is reasonable and in accordance with law.

3. *Use of CV to Calculate FMV*

Torrington also claims that, in its FMV calculation, Commerce resorted to CV for merchandise found to be sold below cost without first determining whether there were any similar models that could have served as price-based comparisons. Torrington's Mem.Supp.Mot.J.Agency R. at 32–37. Torrington contends that, under 19 U.S.C. § 1677b(a)(1)(B), if Commerce finds that home market sales of identical merchandise are an inadequate basis for calculating FMV, Commerce must use the *next most similar* merchandise as the price basis for calculating FMV. *Id.* at 32–33. Commerce responds that section 1677b(b) directs it to resort immediately to CV once Commerce finds and disregards all home market sales of "matching" merchandise. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 24–30. SKF agrees with the position taken by Commerce. SKF's Opp'n to Torrington's Mot.J.Agency R. at 63–77.

■■■■ In *Federal–Mogul,* 20 CIT at ——, 918 F.Supp. at 394–97, the Court addressed this same issue and concluded that Commerce's methodology was reasonable. To determine the amount of antidumping duties to be assessed on a particular entry of merchandise, Commerce must calculate the amount by which FMV exceeds USP. 19 U.S.C. § 1675(a)(2) (1988). The statute requires Commerce to compare the merchandise sold in the United States with "such or similar" merchandise, as defined by 19 U.S.C. § 1677(16), sold in the home country or to a third country. *See Federal–Mogul,* 20 CIT at ——, 918 F.Supp. at 395. When it is not possible to compare identical merchandise, Commerce must compare merchandise that is physically similar to the merchandise sold in the United States, adjusting for any differences. 20 CIT at ——, 918 F.Supp. at

---

1. 19 U.S.C. § 1677f–1 states, in relevant part:

   **(a) In general**
   For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority *may*—
   (1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustments to prices is required, and
   (2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.
   **(b) Selection of samples and averages**

   *The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.*
   (Emphasis added).

2. According to the legislative history, the purpose of section 1677f–1 is to "reduce the costs and administrative burden on the Department of Commerce of determining dumping margins...." H.R.Rep. No. 725, 98th Cong., 2d Sess. 46 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5127, 5173. Consequently, it is clear that Commerce is not *required* to use sampling under section 1677f–1. Rather, Commerce is permitted to use sampling when necessary.

396. In essence, Commerce must find a "model" or "match." Under its current methodology, Commerce disregards all home market sales and immediately resorts to CV if more than 90 percent of home market sales of the model were made below cost over an extended period of time, and are not at prices that permit recovery of all costs within a reasonable period of time in the ordinary course of trade. *See Final Results,* 60 Fed. Reg. at 10,936.

■ As this Court decided in *Federal–Mogul,* Commerce is not required to investigate whether it can make another match based on the next most similar merchandise before resorting to CV. Indeed, 19 U.S.C. § 1677b(b) states that

> [w]henever sales are disregarded by virtue of having been made at less than the cost of production and the remaining sales ... are determined to be inadequate as a basis for the determination of foreign market value ..., *the administering authority shall employ the constructed value of the merchandise* to determine its foreign market value.

(Emphasis added). *See also Zenith Elecs. Corp. v. United States,* 18 CIT 1145, ——, 872 F.Supp. 992, 998–1000 (1994) (rejecting the argument that Commerce should use the actual prices of merchandise, rather than resort to CV, if any merchandise meeting one of the definitions of "such or similar merchandise" survives the cost of production test under 19 U.S.C. § 1677b(b)).

■ In this case, Commerce matched certain AFB models sold to the United States with identical AFB models sold in the home market. *See Final Results,* 60 Fed. Reg. at 10,936. After an investigation, Commerce concluded that the model AFBs were inadequate under 19 U.S.C. § 1677b(b), compelling Commerce to use CV in determining FMV. *Id.* at 26–27. Commerce was not required to use the price of the next most similar merchandise. This methodology was upheld in *Federal–Mogul* and is fully in accordance with law.

## 4. *Adjustment of FMV For Pre–Sale Inland Freight*

In its *Final Results,* Commerce adjusted FMV for home market pre-sale inland freight. 60 Fed.Reg. at 10,941–42. Torrington claims that this deduction for pre-sale inland freight expenses is contrary to law. Torrington's Mem.Supp.Mot.J.Agency R. at 37–39.

■ When Commerce uses ESP to determine USP, it adjusts FMV by deducting indirect selling expenses, including pre-sale inland freight expenses. 19 C.F.R. § 353.56(b)(2) (1994).[3] In *Torrington Co. v. United States,* 68 F.3d 1347, 1356 (Fed.Cir. 1995), the United States Court of Appeals for the Federal Circuit ("CAFC") held that, pursuant to the rationale of *Smith–Corona Group v. United States,* 713 F.2d 1568, 1579 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), it was reasonable for Commerce to deduct indirect selling expenses, such as indirect transportation expenses, from FMV. *See also Timken,* 20 CIT at ——, 930 F.Supp. at 626–27. Hence, Commerce's adjustment of FMV for home market pre-sale freight expenses is sustained in this case.

## 5. *Commerce's Value–Added Tax Adjustment Methodology*

SKF challenges the tax adjustment methodology that Commerce applied in the fourth review, arguing that Commerce should adopt a tax-neutral methodology. SKF's Mem.Supp.Mot.J.Agency R. at 11–29.

Torrington claims that, while a remand is appropriate, the Court should not direct Commerce to employ a specific methodology. Torrington's Opp'n to SKF's Mot.J.Agency R. at 6–7.

Since the CAFC's decision in *Federal–Mogul Corp. v. United States,* 63 F.3d 1572 (Fed.Cir.1995), Commerce has decided to return to the tax-neutral methodology that the appellate court held was a reasonable statutory interpretation. Def.'s Partial Opp'n to

---

**3.** This is known as the "ESP offset." *See Torrington Co. v. United States,* 68 F.3d 1347, 1353

(Fed.Cir.1995).

Pls.' Mots.J.Agency R. at 9. Consequently, upon remand, in accordance with *Federal–Mogul,* Commerce is required to implement the approved tax-neutral methodology in recalculating the adjustment to USP.

### 6. *Clerical Error Affecting Purchase Price*

In its Amended Final Results, Commerce corrected a clerical error in the computer program used to calculate USP. *See Amended Final Results,* 60 Fed.Reg. at 16,-608. SKF claims that this new computer program also contained a clerical error. SKF's Mem.Supp.Mot.J.Agency R. at 30–35. Specifically, SKF alleges that the program converting purchase price sales prices from French francs to U.S. dollars was defective because it did not make the necessary conversions for expense values. *Id.* at 31. SKF included with its motion a programming suggestion for the correction of the clerical error in several monetary fields. *See id.* at 31–32.

Torrington concedes that there was a clerical error in the USP computer program, but claims that SKF improperly suggests in its proposed program that the field for U.S. duty charges ("UTDUTYE") should be converted. Torrington's Opp'n to SKF's Mot.J.Agency R. at 8. Torrington contends that because U.S. duties are paid by the United States customer on purchase price sales, there is no value in the UTDUTYE field to convert. *Id.*

Upon further review, SKF agrees that there is no value in the UTDUTYE field to convert. SKF's Reply Supp.Mot.J.Agency R. at 3.

Commerce agrees that a calculation error existed in its program and consents to a remand for its correction. Def.'s Partial Opp'n to Pls.' Mots.J.Agency R. at 9–10. This Court has consistently required accuracy in dumping assessments. *See, e.g., Meter S.p.A. v. United States,* 19 CIT ——, ——, Slip Op. 95–90 at 1, 1995 WL 283839 (May 11, 1995).

After a review of the record, the Court concludes that a calculation error existed in Commerce's program used to calculate USP. Consequently, upon remand, Commerce is required to correct the clerical error in its conversion program for all relevant purchase price fields except UTDUTYE.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce to allow it to: (1) explain the circumstances in which it will apply the reimbursement regulation in an ESP situation; (2) utilize the approved tax-neutral methodology for adjusting for value-added taxes; and (3) correct the clerical error in the conversion formula used to calculate USP for the relevant fields in the Amended Final Results and recalculate the relevant antidumping duty margins. The Final Results and Amended Final Results are sustained as to all other issues raised by Torrington and SFK.

### ORDER

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to explain the circumstances in which Commerce will apply the reimbursement regulation in an ESP situation; and it is further

**ORDERED** that Commerce utilize the tax-neutral methodology for adjusting for value-added taxes approved by the United States Court of Appeals for the Federal Circuit in *Federal–Mogul Corp. v. United States,* 63 F.3d 1572 (Fed.Cir.1995); and it is further

**ORDERED** that Commerce correct the clerical error in the conversion formula used to calculate U.S. price for the relevant fields in the Amended Final Results and recalculate the relevant dumping margins; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within

fifteen (15) days of the date that the responses or comments are due.